UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES J. CHATMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-02023-GCS |
| | ) |
| **LARS GENTRY,** | ) |
| and | ) |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Plaintiff James J. Chatman, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Amended Complaint (Doc. 18), Plaintiff alleges that in 2021 he began complaining of pain in his eyes. (Doc. 18, p. 6). Sometime prior to February 21, 2021, Plaintiff submitted a request to see Dr. Lars Gentry, the acting optometrist at Pinckneyville. *Id.* On April 12, 2021, Dr. Gentry evaluated Plaintiff, but he made no assessment about the cause of his pain. *Id.* Plaintiff continued to complain of pain in his eyes and on May 8, 2021, Dr. Gentry evaluated him again. Although he made no diagnosis or issued any warning regarding

possible glaucoma, Dr. Gentry prescribed a glaucoma medicine for Plaintiff. *Id*. He also discussed the possibility of cataracts. *Id*.

Plaintiff continued to complain of pain, and he started experiencing vision problems, including bumping into objects. (Doc. 18, p. 6). On July 26, 2021, Dr. Gentry evaluated Plaintiff. He discussed cataracts and renewed Plaintiff's prescription. *Id*. He never discussed the possibility of glaucoma. On October 18, 2021, Plaintiff submitted an emergency grievance regarding continued problems with his vision. *Id*. at p. 6-7. In addition to pain, Plaintiff suffered from blurry vision and black outs in his vision. *Id*. at p. 7). On November 9, 2021, Dr. Gentry evaluated Plaintiff and noted blood at the back of his eye. *Id*.

Plaintiff was eventually sent to Marion Eye Center for a second opinion. He was ultimately diagnosed with several conditions including glaucoma in his right eye, severe stage glaucoma in his left eye, age related cataracts in his right eye, and monocular exotropia in his left eye. (Doc. 18, p. 7). Marion Eye Center informed him that he needed to attend all follow-up appointments for treatment and that failure to treat the conditions could lead to blindness. Although Plaintiff discussed his various conditions with Dr. Gentry, Dr. Gentry never discussed surgical interventions that could save Plaintiff's vision. Plaintiff alleges that as of November 2021, he is completely blind in his left eye and continues to lose vision in his right eye. *Id*. at p. 8. Plaintiff alleges that Dr. Gentry's

failure to diagnose his glaucoma and his failure to offer surgical solutions were due to the cost cutting policies of Wexford Health Sources, Inc. *Id*.

On May 12, 2023, the Court conducted a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Plaintiff was allowed to proceed on an Eighth Amendment deliberate indifference claim against Defendant Gentry for failure to diagnose and treat his eye conditions. (Doc. 21, p. 4). Plaintiff was also allowed to proceed with an Eighth Amendment claim against Defendant Wexford Health Sources, Inc., for maintaining cost cutting policies that delayed outside care, including surgery for his eye conditions. *Id.*

Pending before the Court are motions for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Wexford Health Sources, Inc. (Doc. 56, 57, and 63) and Defendant Lars Gentry (Doc. 58, 59, and 64). Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning the claims against them prior to filing the present lawsuit because he did not file any grievances which address his claims against Defendants pursuant to the procedures set forth in the Illinois Administrative Code. Plaintiff opposes the motion. (Doc. 62). On May 30, 2024, the Court held a hearing on the motions, heard testimony and argument, and took the matter under advisement. Based on the reasons delineated below, the Court **DENIES** the motions.

## FACTS

The parties agree that there is one relevant grievance relating to the claims in this

case. Plaintiff submitted a grievance (# 3531-10-21) dated October 17, 2021, complaining about staff conduct and medical treatment. This grievance was received on October 28, 2021, and marked as an emergency by the Chief Administrative Officer on October 29, 2021. (Doc. 57-1, p. 4). Specifically, the emergency grievance states:

> On October 2, 2021, I wrote a request to the eye doctor because my previous request to nurse sick call went unanswered for the dates of 9/20/21, 9/23/21, 9/28/2021, and 9/30/21. In the unanswered request to nurse sick call I wrote requesting to be seen by the eye doctor for all of the requested above. The request all stated that I have one bad eye and recently my good eye has been giving me trouble. I see blurry, I get headaches, at times I lose all sight and only darkness appears. I have been seeing floater and red flashes. When I wrote the 10/2/21 request directly to the eye doctor I also wrote the same symptoms with the added statement that I have also been experiencing double vision and bumping into things. I only have one good eye and fear losing all of my vision.
>
> On October 18, 2021, I saw the Eye Doctor here who informed me that I had blood behind my eyes and that he had never seen cataracts go bad that fast in anybody eyes as it was now doing in my case. The fact is, I have loss my vision in my left eye and only have a little vision in my right eye and up to this point I have not received adequate medical care and treatment. The original fault lies with Dr. Obaisi and the Eye Doctors of Stateville who let my condition worsen to where it may be no help for me. I need to see a specialist and get needed surgery now. You cannot continue to carry out and enforce Wexford Health Source, Inc, cost cutting policy that we all know is going on.

(Doc. 57-1, p. 4-5; 59-1, p. 4-5).[1] On December 1, 2021, the grievance officer recommended that the grievance be denied as moot as Plaintiff was seen by the optometrist and twice went to Marion Eye Center for evaluation. The CAO concurred with the grievance officer's recommendation on December 6, 2021. (Doc. 57-1, p. 2-3; Doc. 59-1, p. 2-3).

---

[1]  The first paragraph of the grievance is handwritten. The second paragraph of the grievance is typed.

Thereafter, on December 30, 2021, the Administrative Review Board ("ARB") denied the grievance finding that the issue was appropriately addressed by the facility. The ARB noted that Plaintiff was seen by the Optometrist, that Plaintiff was scheduled to go to Marion Eye Center; and that Plaintiff was seen at the Marion Eye Center on 11-9-21 and 11-29-21. (Doc. 57-1, p. 1; Doc. 59-2, p. 1).

During the hearing, Plaintiff testified that his memory is not good as he was in a coma for seven days in February of 2022 or 2023. He admitted that he complained about his eyesight issues while he was housed in Stateville Correctional Center ("Stateville") in 2017. Plaintiff also noted that while in Stateville, he asked to see an outside specialist and that he was only given eyeglasses as treatment. Plaintiff stated that he submitted various nurse sick calls in September 2021 at Pinckneyville for his eye issues as he had to do that first before he could see a doctor. Plaintiff further testified that the eye doctor at Pinckneyville said that he had blood behind his eyes and that he had cataracts. The eye doctor at Pinckneyville referred Plaintiff for outside care. While being treated at the Marion Eye Center, Plaintiff learned he had glaucoma.

### LEGAL STANDARDS

"Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison

Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion."). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th

Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision

does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its

findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

## DISCUSSION

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Defendants maintain that Plaintiff's emergency grievance # 3531-10-21 does not specifically reference any action or inaction by them. Thus, Plaintiff failed to exhaust his administrative remedies against them. The Court, however, finds that Defendants have not met their burden and that Plaintiff did exhaust his claims as to them.

The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate, must at the very least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). *See also Ambrose v. Godinez*, No. 11-3068, 510 Fed. Appx. 470, 472 (7th Cir. Feb. 22, 2013); *but see Jackson v. Shepherd*, No. 13-2651, 552 Fed. Appx. 591, 593 n.1 (7th Cir. Feb. 6, 2014). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d

709, 722 (7th Cir. 2011). This fits within the purpose of the PLRA's exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g., Kaba*, 458 F.3d at 684 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Indeed, the Seventh Circuit has consistently reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Plaintiff testified that he submitted several *unanswered* nurse sick call slips for his eye issues in September 2021. He also testified he told the eye doctor about his eye problems as he was worried about losing his eyesight, and the eye doctor said he had blood behind his eyes and cataracts. The first time Plaintiff learned he had glaucoma was at Marion Eye Center. Plaintiff's testimony is similar to the issues surrounding the medical care he experienced at Pinckneyville and that he grieved about in late 2021, thus rendering his testimony credible.

The purpose of exhaustion is to put the facility on notice of problems so that the facility can address the issues before a lawsuit is filed. Here, the undersigned finds that Plaintiff provided enough information through his emergency grievance to put the prison

officials on notice of the nature of his claims against Defendant Wexford Health Sources, Inc., and Defendant Gentry. While Plaintiff may not have specifically mentioned glaucoma in his grievance, there is no requirement that he be that specific. In fact, such specificity would hardly be expected from someone with no medical training. Rather, the gravamen of Plaintiff's grievance is about the pain and conditions he was experiencing in connection with his eyes and the lack of care he was receiving. Plaintiff's grievance squarely places the facility on notice of these issues.

Furthermore, the involvement of the Defendants can be determined from Plaintiff's grievance. For example, Wexford Health Sources, Inc., was specifically mentioned by name when Plaintiff complained about the cost cutting policies that affected his care. As to Defendant Gentry, it is true that this individual was not specifically mentioned. It is also true that Plaintiff specifically lays the blame with Dr. Obaisi and the Eye Doctors of Stateville. However, Plaintiff's complaint is not just limited to those individuals. Rather, he simply states that the original fault lies with them. When read holistically, Plaintiff is clearly complaining about all such eye doctors who allowed his eyes to deteriorate to its current condition. Plaintiff provided sufficient descriptive detail by specifically referencing the "eye doctor." Coupled with his own medical records and the dates listed in the grievance, Defendant's Gentry's involvement can readily be

ascertained. Construing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants have not carried their burden regarding exhaustion.[2]

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment on the issue of exhaustion (Doc. 56, 58).

**IT IS SO ORDERED.**

DATED: **June 6, 2024.**

Digitally signed by Judge Sison
Date: 2024.06.06 14:32:24 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

---

[2] Defendants raise other extraneous arguments that are not relevant to the exhaustion issue and are better suited/addressed at the merits stage of this case.